IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LOUISIANA ENVIRONMENTAL ACTION NETWORK, INC. | ) ) ) | CIVIL ACTION NO. 2:15-cv-6300 |
| Plaintiff, | ) ) | JUDGE |
| v. | ) ) ) | MAGISTRATE JUDGE |
| MO-DAD UTILITIES, LLC; WILLIAM A. STEGALL, SR.; GWENDOLYN MICHEL STEGALL; and WILLIAM A. STEGALL, JR. | ) ) ) ) | |
| Defendants, | ) | |

_____

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND PENALTIES
_____

**INTRODUCTION**

1.      This citizen suit under the federal Clean Water Act is brought by the Louisiana

Environmental Action Network, Inc. ("LEAN") as a result of years of chronic violations of

wastewater discharge permits held by Mo-Dad Utilities, LLC. The permits at issue are for eight

(8) wastewater treatment facilities owned and operated by the Defendants.  Under the terms of

the wastewater treatment permits, referred to as Louisiana Pollutant Discharge Elimination

System or ("LPDES") permits, the Defendants are permitted to discharge treated sewage effluent

into the streams north of Lake Maurepas in southeast Louisiana.  In order to protect public health

and the environment, these permits contain maximum limits for total suspended solids ("TSS"),

biochemical oxygen demand ("BOD"), pH levels, and fecal coliform set by the Louisiana

Department of Environmental Quality.  By consistently discharging TSS, BOD, and fecal

coliform at levels greater than those allowed by their permits and by regularly falling outside of the pH rage allowed by their permits, the Defendants have violated sections 301 and 307 of the Clean Water Act, 33 U.S.C. §§ 1311, 1342. BOD is an indicator of the organic waste remaining in the sewage that Defendants flush into Louisiana's streams. This organic waste removes oxygen from the water making it harder for fish and other aquatic wildlife to survive. Fecal coliform is a bacterial colony that originates in the feces within the intestines of humans and other warm-blooded animals. Fecal coliform is an indicator of bacterial contamination, such as E. Coli and other pathogens. TSS is an indicator of all undissolved waste remaining in the sewage water that Defendants flush into Louisiana's streams, such as toilet paper and feces.

## PARTIES

2.      LEAN is a Baton Rouge based umbrella organization established to promote and protect the health of Louisiana's natural environment for the use and enjoyment of the people of Louisiana.  In executing its purpose, LEAN ensures that the laws and regulations of the State, intended to preserve and enhance its natural resources and environmental quality, are diligently followed in letter and in spirit.  LEAN has a particular interest in the preservation and restoration of water quality in the rivers and streams of Louisiana, and in protecting its members from exposure to public health risks. In addition, LEAN's interest in water quality flows directly from the personal interests of its members who own property adjacent to the waterways at issue in this suit, and who use those waters that receive the sewer discharges from the Defendants' facilities for recreation, boating, swimming, and aesthetic enjoyment.  Water pollution and threats to water quality from Defendants' facilities and their repeated violation of their permits directly harm these members of LEAN.  See Exhibit A and Exhibit B incorporated and attached to this

Complaint.

3.      Mo-Dad Utilities, LLC appears in the records of the Louisiana Department of Environmental Quality as the owner and/or operator of the sewer treatment facilities at issue in this suit.  Mo-Dad Utilities, LLC is directly responsible for complying with the terms of its LPDES permits from the Louisiana Department of Environmental Quality and for ensuring that adequate monitoring of discharges has taken place.

4.      William A. Stegall, Sr., William A. Stegall, Jr. and Gwendolyn Michel Stegall are the owners and managers of Mo-Dad Utilities, LLC, which is one of several companies held by this family. Other companies they hold include Mo-Dad Companies, LLC; Pavement Maintenance Unlimited, LLC; Mo-Dad One, Inc.; General Staffing; and, Mo-Dad Global Environmental Systems, LLC.  In 2012 and 2014, courts of Louisiana held that the separate corporate entities used by the Stegalls should be disregarded for purposes of liability. *See Hector v. Mo-Dad Envtl Serv., LLC, et al.*, 134 So.3d 133 (3rd Cir. Ct. App. 2014), attached and incorporated as Exhibit C. LEAN therefore is informed, believes, and alleges that Mo-Dad Utilities, LLC and the other companies owned by the Stegalls are alter-egos of the Stegalls, and that the corporate form for all of the Stegalls' entities should be disregarded with respect to the allegations of this complaint.  Further, LEAN alleges that any change in ownership or assets among entities owned or controlled by the Stegalls does not affect their liability for permit violations, and any assets held by any of the Stegalls or their entities should be available to satisfy any injunctive relief or penalties resulting from this lawsuit.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction over this action pursuant to 33 U.S.C. §

1365(a) (Clean Water Act's citizens suit provision) and 28 U.S.C. § 1331 (federal question jurisdiction).  In accordance with the notice requirements of the Clean Water Act's citizen suit provision, 33 U.S.C. § 1365(b); 40 C.F.R. § 135.2, LEAN provided sixty days written notice to the utility regarding the allegations on which this suit is based, which was delivered on September 16, 2015.

6.      Venue is appropriate in this judicial district and in this court pursuant to 33 U.S.C. § 1365(c), in that the violations of the effluent standards and limitations giving rise to the claims in this suit occurred in the Eastern District of Louisiana.

## BACKGROUND

7.      Congress passed the Clean Water Act in 1972 to "restore and maintain the chemical, physical, and biological integrity of the nation's waters."  Clean Water Act § 101(a), 33 U.S.C. § 1251.  In the Act, Congress identified the national goal of eliminating "the discharge of pollutants into navigable waters" by 1985.  Clean Water Act § 101(a)(1), 33 U.S.C. § 1251(a)(1).  In furtherance of this goal, the Clean Water Act provides a comprehensive approach for the regulation of pollution discharges into the waters of the United States.  Section 301 of the Act prohibits the "discharge of any pollutant by any person" without proper authorization, such as a permit issued under sections 402 or 404.  33 U.S.C. § 1311(a).  One of the most common types of direct dischargers is the wastewater treatment facility, which treats primarily domestic sewage.  These dischargers must comply with the terms in their National Pollutant Discharge Elimination System, or "NPDES," permits.  33 U.S.C. § 1342(h). Section 1342(b) provides for the issuance of such permits by individual States. In Louisiana, the issuance of such permits has been delegated to the Louisiana Department of Environmental Quality, and is referred to as a

Louisiana Pollutant Discharge Elimination System, or "LPDES" permit.

8.      Congress provided for enforcement of the discharge limitations in the Clean Water Act through citizen suits like the present one.  Title 33 U.S.C. § 1365 permits a citizen to bring a claim for a violation of any effluent standard or limitation under the Act.  Violation of an NPDES permit is a violation of an effluent standard or limitation and is actionable under the citizen suit provision of the Clean Water Act.


### DEFENDANTS' PERMIT VIOLATIONS

Brady Place Subdivision

9.      Mo-Dad Utilities, LLC has owned and operated the Brady Place Subdivision Wastewater Treatment Facility in Loranger, Louisiana since 2003.  This facility discharges pollutants pursuant to LPDES General Permit No. LAG540972, which authorizes it to discharge sewage from the facility into local drainage, flowing then to Pollard Branch.  The permit requires monthly discharge monitoring reports (DMRs) and sets limitations on the amount of total suspended solids (TSS), biological oxygen demand (BOD), pH levels, and fecal coliform that may be contained in the discharged sewer.  A review of the DMRs for the Brady Place Subdivision Treatment Facility between January 2010 and September 2015 shows repeated, severe violations of these permit limits.  The excessive discharges from the Brady Place Subdivision facility pollute Pollard Branch with inadequately treated feces, urine, and other human waste.

Burdon Orleans Subdivision

10.     Mo-Dad Utilities, LLC has owned and operated the Burdon Orleans Subdivision Wastewater Treatment Facility in Ponchatoula, Louisiana since at least 2003.  This facility discharges pollutants pursuant to LPDES Permit No. LAG541047, which authorizes it to discharge sewage from the facility into South Slough, then to Lake Maurepas.  LPDES Permit No. LAG541047 requires monthly discharge monitoring reports (DMRs) and sets limitations of total suspended solids (TSS), biological oxygen demand (BOD), and fecal coliform that may be contained in the discharged effluent.  A review of the DMRs for the Burdon Orleans Subdivision Treatment Facility between January 2010 and December 2014 shows repeated, severe violations of these permit limits.  The excessive discharges from the Burdon Orleans Subdivision facility pollute South Slough and Lake Maurepas with inadequately treated feces, urine, and other human waste.  Lake Maurepas is listed by the EPA as an "impaired water" under Section 303(d) of the Clean Water Act.

Emerald Gardens Subdivision

11.     Mo-Dad Utilities, LLC has owned and operated the Emerald Gardens Subdivision Wastewater Treatment Facility in Ponchatoula, Louisiana since 2003. This facility discharges pollutants pursuant to LPDES General Permit No. LAG540979, which authorizes it to discharge sewage from the facility into Ponchatoula Creek.  The permit requires monthly discharge monitoring reports (DMRs) and sets limitations on the amount of total suspended solids (TSS), biological oxygen demand (BOD), pH levels and fecal coliform that may be contained in the discharged effluent.  A review of the DMRs for the Emerald Gardens Subdivision Treatment Facility between January 2010 and September 2015 shows repeated, severe violations of these

permit limits.  The excessive discharges from the Emerald Gardens Subdivision facility pollute Ponchatoula Creek with inadequately treated feces, urine, and other human waste. Ponchatoula Creek is listed by the EPA as an "impaired water" under Section 303(d) of the Clean Water Act.

Azalea Woods Subdivision

12.     Mo-Dad Utilities, LLC has owned and operated the Azalea Woods Subdivision Wastewater Treatment Facility in Ponchatoula, Louisiana since 2003. This facility discharges pollutants pursuant to LPDES General Permit No. LAG560217, which authorizes it to discharge sewage from the facility into Ponchatoula Creek by way of the Yellow Water River.  The permit requires monthly discharge monitoring reports (DMRs) and sets limitations on the amount of total suspended solids (TSS), biological oxygen demand (BOD), and fecal coliform that may be contained in the discharged effluent.  A review of the DMRs for the Azalea Woods Subdivision Treatment Facility between January 2010 and August 2015 shows repeated, severe violations of these permit limits. Additionally, the facility failed to submit the monthly DMRs as required by its permit for September 2013.  The excessive discharges from the Emerald Gardens Subdivision facility pollute Yellow Water River and Ponchatoula Creek with inadequately treated feces, urine, and other human waste. Yellow Water River and Ponchatoula Creek are both listed by the EPA as "impaired waters" under Section 303(d) of the Clean Water Act.

Lakin Rouge Subdivision

13.     Mo-Dad Utilities, LLC has owned and operated the Lakin Rouge Subdivision Wastewater Treatment Facility in Ponchatoula, Louisiana since 2004. This facility discharges pollutants pursuant to LPDES General Permit No. LAG541310, which authorizes it to discharge sewage from the facility into the Natalbany River.  The permit requires monthly discharge

monitoring reports (DMRs) and sets limitations on the amount of total suspended solids (TSS), biological oxygen demand (BOD), and fecal coliform that may be contained in the discharged effluent.  A review of the DMRs for the Lakin Rouge Subdivision Treatment Facility between April 2010 and September 2014 shows repeated, severe violations of these permit limits.  The excessive discharges from the Lakin Rouge Subdivision facility pollute the Natalbany with inadequately treated feces, urine, and other human waste. The Natalbany River is listed by the EPA as an "impaired water" under Section 303(d) of the Clean Water Act.

<u>Isle of Orleans Subdivision</u>

14.     Mo-Dad Utilities, LLC has owned and operated the Isle of Orleans Subdivision Wastewater Treatment Facility in Ponchatoula, Louisiana since 2004. This facility discharges pollutants pursuant to LPDES General Permit No. LAG531836, which authorizes it to discharge sewage from the facility into the South Slough by way of Big Branch.  The permit requires monthly discharge monitoring reports (DMRs) and sets limitations on the amount of total suspended solids (TSS), biological oxygen demand (BOD), and fecal coliform that may be contained in the discharged effluent.  A review of the DMRs for the Isle of Orleans Subdivision Treatment Facility between July 2010 and June 2015 shows repeated, severe violations of these permit limits.  Additionally, the facility violated its LPDES permit by failing to submit a DMR for the first semi-annual period in 2013. The excessive discharges from the Isle of Orleans Subdivision facility pollute the South Slough and Big Branch with inadequately treated feces, urine, and other human waste.

<u>Whispering Winds Subdivision</u>

15.     Mo-Dad Utilities, LLC has owned and operated the Whispering Winds

Subdivision Wastewater Treatment Facility in Tickfaw, Louisiana since 2004. This facility

discharges pollutants pursuant to LPDES General Permit No. LAG541308, which authorizes it to

discharge sewage from the facility into the Natalbany River.  The permit requires monthly

discharge monitoring reports (DMRs) and sets limitations on the amount of total suspended

solids (TSS), biological oxygen demand (BOD), and fecal coliform that may be contained in the

discharged effluent.  A review of the DMRs for the Whispering Winds Subdivision Treatment

Facility between January 2010 and September 2015 shows repeated, severe violations of these

permit limits.  The excessive discharges from the Whispering Winds Subdivision facility pollute

the Natalbany River with inadequately treated feces, urine, and other human waste. The

Natalbany River is listed by the EPA as an "impaired water" under Section 303(d) of the Clean

Water Act.

    <u>The Village Subdivision</u>

    16.    Mo-Dad Utilities, LLC has owned and operated The Village Subdivision

Wastewater Treatment Facility in Ponchatoula, Louisiana since 2004. This facility discharges

pollutants pursuant to LPDES General Permit No. LAG541280, which authorizes it to discharge

sewage from the facility into the Natalbany River by way of Ponchatoula Creek.  The permit

requires monthly discharge monitoring reports (DMRs) and sets limitations on the amount of

total suspended solids (TSS), biological oxygen demand (BOD), and fecal coliform that may be

contained in the discharged effluent.  A review of the DMRs for the The Village Subdivision

Treatment Facility between April 2010 and June 2014 shows repeated, severe violations of these

permit limits.  The excessive discharges from The Village Subdivision facility pollute the

Natalbany River and Ponchatoula Creek with inadequately treated feces, urine, and other human

waste. The Natalbany River and Ponchatoula Creek are all listed by the EPA as "impaired waters" under Section 303(d) of the Clean Water Act.

## PRAYER FOR RELIEF

WHEREFORE, the Louisiana Environmental Action Network respectfully prays that this Court grant it the following relief:

(1)     A declaration that the Defendants' violations of the terms of their treatment permits constitute violations of the Clean Water Act and its implementing regulations;

(2)     A declaration that the corporate entities used by Gwendolyn Michel Stegall, William A. Stegall, Jr. and William A. Stegall, Sr., are alter-egos of the individuals and that the corporate form should be disregarded for purposes of the judgment and remedies in this matter.

(3)     An award of civil penalties in an appropriate amount based on the number of days in which the Defendants were in violation of the Clean Water Act for each pollutant discharged;

(4)     An injunction requiring the Defendants to take all actions necessary, including the installation of appropriate treatment technology, to prevent violation of the terms of their permits and the Clean Water Act in the future;

(5)     Retain jurisdiction of this matter to ensure compliance with its decrees;

(6)     An award of plaintiff's attorneys' fees, expert fees, and other costs; and

(7)     Such other and further relief as the Court finds proper in the premises.

Dated this 24th day of November, 2015.

[SIGNATURE BLOCK ON NEXT PAGE]

Respectfully submitted,

Waltzer Wiygul & Garside LLC

_s/_   Clay Garside
_____

Clay Garside, LA Bar #29873
Mauricio Sierra, LA Bar #  35560
Waltzer Wiygul & Garside LLC
14399 Chef Menteur Highway #D
New Orleans, LA 70129
Telephone: (504) 254-4400
Fax: (504) 254-1112

Joel Waltzer, LA Bar #19268
Marc Florman, LA Bar #
Michael Brown, LA Bar #
Waltzer Wiygul & Garside LLC
1000 Behrman Highway
Gretna, LA 70056
Telephone: (504) 340-6300
Fax: (504) 340-6330

Robert Wiygul, LA Bar #17411
Waltzer Wiygul & Garside LLC
1011 Iberville Dr.
Ocean Springs, MS 39564
Telephone: (228) 872-1125
Fax: (228) 872-1128

Plaintiff's Address:

Louisiana Environmental Action Network
P.O. Box 66323
Baton Rouge, Louisiana 70806